# EXHIBIT B

# Lesson Plan Overview

| | |
|---|---|
| **Course** | Refugee, Asylum, and International Operations Directorate Officer Training Asylum Division Officer Training Course |
| **Lesson** | *Credible Fear of Persecution and Torture Determinations* |
| **Rev. Date** | April 30, 2019 |
| **Lesson Description** | The purpose of this lesson is to explain how to determine whether an alien subject to expedited removal or an arriving stowaway has a credible fear of persecution or torture. |
| **Terminal Performance Objective** | The Asylum Officer will be able to correctly make a credible fear determination consistent with the statutory provisions, regulations, policies, and procedures that govern whether the applicant has established a credible fear of persecution or a credible fear of torture. |
| **Enabling Performance Objectives** | 1. Identify which persons are subject to expedited removal. (ACRR7)(OK4)(ACRR2)(ACRR11)(APT2) |
| | 2. Examine the function of credible fear screening. (ACRR7)(OK1)(OK2)(OK3) |
| | 3. Define the standard of proof required to establish a credible fear of persecution. (ACRR7) |
| | 4. Identify the elements of "torture" as defined in the *Convention Against Torture* and the regulations that are applicable to a credible fear of torture determination (ACRR7) |
| | 5. Describe the types of harm that constitute "torture" as defined in the *Convention Against Torture* and the regulations. (ACRR7) |
| | 6. Define the standard of proof required to establish a credible fear of torture. (ACRR7) |
| | 7. Identify the applicability of bars to asylum and withholding of removal in the credible fear context. (ACRR3)(ACRR7) |
| **Instructional Methods** | Lecture, practical exercises |
| **Student Materials/ References** | Lesson Plan; Procedures Manual, Credible Fear Process (Draft); INA § 208; INA § 235; INA § 241(b)(3); 8 C.F.R. § 1.2; 8 C.F.R. §§ 208.16-18; 8 C.F.R. § 208.30; 8 C.F.R. § 235.3. |
| | Credible Fear Forms: **Form I-860**: Notice and Order of Expedited Removal; **Form I-867-A&B**: Record of Sworn Statement; **Form I-869**: |

Record of Negative Credible Fear Finding and Request for Review by Immigration Judge; **Form I-863**: Notice of Referral to Immigration Judge; **Form I-870**: Record of Determination/Credible Fear Worksheet; **Form M-444**: Information about Credible Fear Interview

**Method of Evaluation**

Written test

**Background Reading**

1. Immigration and Naturalization Service, *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312 (March 6, 1997).

2. Immigration and Naturalization Service, *Regulations Concerning the Convention Against Torture*, 64 Fed. Reg. 8478 (February 19, 1999).

3. Immigration and Naturalization Service, *Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act*, 67 Fed. Reg. 68924 (November 13, 2002).

4. Customs and Border Protection, *Designating Aliens For Expedited Removal*, 69 Fed. Reg. 48877 (August 11, 2004).

5. Immigration and Customs Enforcement, *Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture*, ICE Directive No. 11002.1 (effective January 4, 2010).

6. Department of Homeland Security, *Eliminating Exception to Expedited Removal Authority for Cuban Nationals Arriving by Air*, 82 Fed. Reg. 4769 (January 17, 2017).

7. Department of Homeland Security, *Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea*, 82 Fed. Reg. 4902 (January 17, 2017).

8. H. Rept. No. 109-72 at 161-68 (2005).

## CRITICAL TASKS

**Critical Tasks**

Knowledge of U.S. case law that impacts RAIO (3)
Knowledge of the Asylum Division history. (3)
Knowledge of the Asylum Division mission, values, and goals. (3)
Knowledge of how the Asylum Division contributes to the mission and goals of RAIO, USCIS, and DHS. (3)
Knowledge of the Asylum Division jurisdictional authority. (4)
Knowledge of the applications eligible for special group processing (e.g., ABC, NACARA, Mendez) (4)
Knowledge of relevant policies, procedures, and guidelines establishing applicant eligibility for a credible fear of persecution or credible fear of torture determination. (4)
Skill in identifying elements of claim. (4)
Skill in assessing credibility of aliens in credible fear interviews (4)
Knowledge of inadmissibility grounds relevant to the expedited removal process and of mandatory bars to asylum and withholding of removal. (4)
Knowledge of the appropriate points of contact to gain access to a claimant who is in custody (e.g., attorney, detention facility personnel) (3)
Skill in organizing case and research materials (4)
Skill in applying legal, policy, and procedural guidance (e.g., statutes, case law) to evidence and the facts of a case. (5)
Skill in analyzing complex issues to identify appropriate responses or decisions. (5)

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................5

II.  BACKGROUND ................................................................................................................5
  A.  ALIENS WHO MAY BE SUBJECT TO EXPEDITED REMOVAL .................................6
  B.  ALIENS SEEKING ADMISSION WHO ARE EXEMPT FROM EXPEDITED REMOVAL ........8

III.  FUNCTION OF CREDIBLE FEAR SCREENING ..........................................................9

IV.  DEFINITION OF CREDIBLE FEAR OF PERSECUTION AND CREDIBLE FEAR OF TORTURE ...........9
  A.  DEFINITION OF CREDIBLE FEAR OF PERSECUTION ...............................................9
  B.  DEFINITION OF CREDIBLE FEAR OF TORTURE .....................................................10

V.  BURDEN OF PROOF AND STANDARD OF PROOF FOR CREDIBLE FEAR DETERMINATIONS ...10
  A.  BURDEN OF PROOF / TESTIMONY AS EVIDENCE ..................................................10
  B.  CREDIBLE FEAR STANDARD OF PROOF: SIGNIFICANT POSSIBILITY .....................11
  C.  IMPORTANT CONSIDERATIONS IN INTERPRETING AND APPLYING THE STANDARD .......12
  D.  IDENTITY ............................................................................................................13

VI.  CREDIBILITY ................................................................................................................13
  A.  CREDIBILITY STANDARD .....................................................................................13
  B.  EVALUATING CREDIBILITY IN A CREDIBLE FEAR INTERVIEW ..............................14
  C.  ASSESSING CREDIBILITY IN CREDIBLE FEAR WHEN MAKING A CREDIBLE FEAR DETERMINATION ...15
  D.  DOCUMENTING A CREDIBILITY DETERMINATION ..................................................17

VII.  ESTABLISHING A CREDIBLE FEAR OF PERSECUTION ........................................18
  A.  GENERAL CONSIDERATIONS IN CREDIBLE FEAR ..................................................18
  B.  PAST PERSECUTION/WELL-FOUNDED FEAR OF FUTURE PERSECUTION ................19
  C.  MULTIPLE CITIZENSHIP ........................................................................................25
  D.  STATELESSNESS/LAST HABITUAL RESIDENCE ......................................................25

VIII.  ESTABLISHING A CREDIBLE FEAR OF TORTURE ..............................................25
  A.  DEFINITION OF TORTURE .....................................................................................26
  B.  GENERAL CONSIDERATIONS .................................................................................26
  C.  SPECIFIC INTENT .................................................................................................27
  D.  DEGREE OF HARM ...............................................................................................27
  E.  IDENTITY OF THE TORTURER ...............................................................................28
  F.  PAST HARM .........................................................................................................30
  G.  INTERNAL RELOCATION .......................................................................................30

IX.  APPLICABILITY OF BARS TO ASYLUM AND WITHHOLDING OF REMOVAL ............31
  A.  NO BARS APPLY ..................................................................................................31
  B.  ASYLUM OFFICER MUST ELICIT TESTIMONY .......................................................31
  C.  FLAGGING POTENTIAL BARS ...............................................................................32

X.  OTHER ISSUES ..............................................................................................................32
  A.  TREATMENT OF DEPENDENTS ...............................................................................32
  B.  ATTORNEYS AND CONSULTANTS ...........................................................................33
  C.  FACTUAL SUMMARY ...........................................................................................33
  D.  NO GENERAL PRESUMPTIONS AGAINST CERTAIN TYPES OF CASES .......................33
  E.  IDENTITY OF THE TORTURER ...............................................................................34

XIII.  SUMMARY ..................................................................................................................34
  A.  EXPEDITED REMOVAL .........................................................................................34
  B.  FUNCTION OF CREDIBLE FEAR SCREENING ..........................................................34
  C.  CREDIBLE FEAR STANDARD OF PROOF: SIGNIFICANT POSSIBILITY ......................34
  D.  CREDIBILITY ........................................................................................................35
  E.  ESTABLISHING A CREDIBLE FEAR OF PERSECUTION .............................................35
  F.  ESTABLISHING A CREDIBLE FEAR OF TORTURE ....................................................35
  G.  OTHER ISSUES .....................................................................................................36

| Presentation | References |
|---|---|

## I.   INTRODUCTION

The purpose of this lesson plan is to explain how to determine whether an alien seeking admission to the United States, who is subject to expedited removal or is an arriving stowaway, has a credible fear of persecution or torture using the credible fear standard defined in the Immigration and Nationality Act (INA or the Act), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), and implementing regulations.

## II.   BACKGROUND

The expedited removal provisions of the INA were added by section 302 of IIRIRA, and became effective on April 1, 1997.

INA § 235(a)(2); § 235 (b)(1); *see* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (Pub. L. No. 104-208, 110 Stat. 3009, Sept. 30, 1996).

In expedited removal, certain aliens seeking admission to the United States are immediately removable from the United States by the Department of Homeland Security (DHS), unless they indicate an intention to apply for asylum or express a fear of persecution or torture or a fear of return to their home country, in which case they are referred to an asylum officer to determine whether they have a credible fear of persecution or torture. Aliens who are present in the United States, and who have not been admitted, are treated as applicants for admission. In general, aliens subject to expedited removal are not entitled to a full immigration removal hearing or further review by a federal court unless they are able to establish a credible fear of persecution or torture.

INA § 235(a)(1).

INA section 235 and its implementing regulations provide that certain categories of aliens are subject to expedited removal. Those include the following: arriving stowaways; certain arriving aliens at ports of entry who are inadmissible under INA section 212(a)(6)(C) (because they have presented fraudulent documents or made a false claim to U.S. citizenship or other material misrepresentations to gain admission or other immigration benefits) or 212(a)(7) (because they lack proper documents to gain admission); and certain designated aliens who have not been admitted or paroled into the U.S.

Those aliens subject to expedited removal who indicate an intention to apply for asylum, a fear of persecution or torture, or a fear of return to their home country are referred to asylum officers to determine whether they have a credible fear of persecution or torture. An asylum officer will then conduct a credible fear interview to determine whether there is a significant possibility that the alien can establish eligibility for asylum as a refugee under section 208 of the

INA § 235(b)(1)(A); 8 C.F.R. § 208.30.

---

AILA Doc. No. 19050832. (Posted 5/9/19)

INA or withholding of removal under section 241(b)(3) of the INA. Pursuant to regulations implementing the Convention Against Torture (CAT) issued under the authority of the Foreign Affairs Reform and Restructuring Act of 1998, if an alien does not establish a credible fear of persecution, the asylum officer will then determine whether there is a significant possibility the alien can establish eligibility for protection under the Convention Against Torture through withholding of removal or deferral of removal.

*Sec. 2242(b) of the Foreign Affairs Reform and Restructuring Act of 1998 (Pub. L. 105-277, Div. G, Oct. 21, 1998) and 8 C.F.R. § 208.30(e)(3).*

A.   **Aliens Who May Be Subject to Expedited Removal**

The following categories of aliens may be subject to expedited removal:

1.   Arriving aliens coming or attempting to come into the United States at a port of entry or an alien seeking transit through the United States at a port of entry.

*8 C.F.R. § 235.3(b)(1)(i); see 8 C.F.R. § 1.2 for the definition of an "arriving alien."*

Aliens attempting to enter the United States at a land border port of entry with Canada must first establish eligibility for an exception to the Safe Third Country Agreement, through a Threshold Screening interview, in order to receive a credible fear interview.

*8 C.F.R. § 208.30(e)(6). See also ADOTC Lesson Plan, Safe Third Country Threshold Screening.*

2.   Aliens who are interdicted in international or United States waters and brought to the United States by any means, whether at a port of entry or not.

*8 C.F.R. § 1.2; see also Immigration and Naturalization Service, Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act, 67 Fed. Reg. 68924 (Nov. 13, 2002); Department of Homeland Security, Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea, 82 Fed. Reg. 4902 (Jan. 17, 2017), as corrected in Department of Homeland Security, Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea, 82 Fed. Reg. 8431 (Jan. 25, 2017).*

This category does not include aliens interdicted at sea who are never brought to the United States.

AILA Doc. No. 19050602. (Posted 5/6/19)

3. Aliens who have been paroled under INA section 212(d)(5) on or after April 1, 1997, may be subject to expedited removal upon termination of their parole.

This provision encompasses those aliens paroled for urgent humanitarian or significant public benefit reasons.

This category does not include those who were given advance parole as described in Subsection B.6. below.

4. Aliens who have arrived in the United States by sea (either by boat or by other means) who have not been admitted or paroled, and who have not been physically present in the United States continuously for the two-year period immediately prior to the inadmissibility determination.

*Immigration and Naturalization Service, Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act*, 67 Fed. Reg. 68924 (Nov. 13, 2002); Department of Homeland Security, *Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea*, 82 Fed. Reg. 4902 (Jan. 17, 2017), *as corrected in* Department of Homeland Security, *Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea*, 82 Fed. Reg. 8431 (Jan. 25, 2017).

5. Aliens who have been apprehended within 100 air miles of any U.S. international land border, who have not been admitted or paroled, and who have not established to the satisfaction of an immigration officer (typically a Border Patrol Agent) that they have been physically present in the United States continuously for the 14-day period immediately prior to the date of encounter.

Customs and Border Protection, *Designating Aliens For Expedited Removal*, 69 Fed. Reg. 48877 (Aug. 11, 2004); Department of Homeland Security, *Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea*, 82 Fed. Reg. 4902 (Jan. 17, 2017), *as corrected in* Department of Homeland Security, *Eliminating Exception to Expedited Removal Authority for*

B.    **Aliens Seeking Admission Who are Exempt from Expedited Removal**

The following categories of aliens are exempt from expedited removal:

*Cuban Nationals Encountered in the United States or Arriving by Sea*, 82 Fed. Reg. 8431 (Jan. 25, 2017). While Cuban citizens and nationals were previously exempt from expedited removal, the regulations at 8 C.F.R. § 235.3(b)(1)(i) were modified to remove the exemption. *See* Department of Homeland Security, *Eliminating Exception to Expedited Removal Authority for Cuban Nationals Arriving by Air*, 82 Fed. Reg. 4769 (Jan. 17, 2017), *as corrected in* Department of Homeland Security, *Eliminating Exception to Expedited Removal Authority for Cuban Nationals Arriving by Air*, 82 Fed. Reg. 8353 (Jan. 25, 2017).

1.    Stowaways

Stowaways are not eligible to apply for admission to the United States, and therefore they are not subject to the expedited removal program under INA section 235(b)(1)(A)(i). They are also not eligible for a full hearing in removal proceedings under INA section 240. However, if a stowaway indicates an intention to apply for asylum under INA section 208 or a fear of persecution, an asylum officer will conduct a credible fear interview and refer the case to an immigration judge for an asylum and/or Convention Against Torture hearing if the stowaway satisfies the credible fear standard.

INA § 235(a)(2).

2.    Persons granted asylum status under INA section 208.

8 C.F.R. § 235.3(b)(5)(iii).

3.    Persons admitted to the United States as refugees under INA section 207.

8 C.F.R. § 235.3(b)(5)(iii).

4.    Persons admitted to the United States as lawful permanent residents.

8 C.F.R. § 235.3(b)(5)(ii).

5.    Persons paroled into the United States prior to April 1, 1997.

6.    Persons paroled into the United States pursuant to a grant of advance parole that the alien applied for and obtained in

the United States prior to the alien's departure from and
return to the United States.

7.  Persons denied admission on charges other than or in
addition to INA Section 212(a)(6)(C) or 212(a)(7).

8.  Persons applying for admission under INA Section 217,
Visa Waiver Program for Certain Visitors ("VWP").

This exemption includes nationals of non-VWP countries
who attempt entry by posing as nationals of VWP
countries.

Individuals seeking admission under the Guam and
Northern Mariana Islands visa waiver program under INA
section 212(l) are not exempt from expedited removal
provisions of the INA.

9.  Asylum seekers attempting to enter the United States at a
land border port of entry with Canada must first establish
eligibility for an exception to the Safe Third Country
Agreement, through a Threshold Screening interview, in
order to receive a credible fear interview.

8 C.F.R. § 235.3(b)(3).

8 C.F.R. § 235.3(b)(10); *see also Matter of Kanagasundram,* 22 I&N Dec. 963 (BIA 1999); Procedures Manual, Credible Fear Process (Draft), sec. IV.L., "Visa Waiver Permanent Program"; and Michael A. Pearson, Executive Associate Commissioner, Office of Field Operations. Visa Waiver Pilot Program (VWPP) Contingency Plan, Wire #2 (Washington DC: Apr. 28, 2000).

8 C.F.R. § 208.30(e)(6).

## III. FUNCTION OF CREDIBLE FEAR SCREENING

In applying the credible fear standard, it is critical to understand the
function of the credible fear screening process.  As explained by the
Department of Justice when issuing regulations adding Convention
Against Torture screening to the credible fear process, the function of
the process is to "quickly identify potentially meritorious claims to
protection and to resolve frivolous ones with dispatch."

Immigration and Naturalization Service, *Regulations Concerning the Convention Against Torture,* 64 Fed. Reg. 8478, 8479 (Feb. 19, 1999).

## IV. DEFINITION OF CREDIBLE FEAR OF PERSECUTION AND CREDIBLE FEAR OF TORTURE

### A. Definition of Credible Fear of Persecution

According to statute, an alien has a credible fear of persecution
only if "there is a significant possibility, taking into account the
credibility of the statements made by the alien in support of the
alien's claim and such other facts as are known to the officer,
that the alien could establish eligibility for asylum" as a refugee
under section 208 of the INA.  Regulations further provide that
the applicant will be found to have a credible fear of persecution

INA § 235(b)(1)(B)(v); 8 C.F.R. § 208.30(e)(2).

if the applicant establishes that there is a significant possibility that he or she can establish eligibility for withholding of removal under section 241(b)(3) of the INA.

## B. Definition of Credible Fear of Torture

An applicant will be found to have a credible fear of torture if the applicant establishes that there is a significant possibility that he or she is eligible for withholding of removal under section 241(b)(3) of the Act or deferral of removal, if the applicant is subject to a mandatory bar to withholding of removal under the regulations issued pursuant to the legislation implementing the Convention Against Torture.

*8 C.F.R. § 208.30(e)(3); 8 C.F.R. § 208.16; 8 C.F.R. § 208.17*

## V. BURDEN OF PROOF AND STANDARD OF PROOF FOR CREDIBLE FEAR DETERMINATIONS

### A. Burden of Proof / Testimony as Evidence

The applicant bears the burden of proof to establish a credible fear of persecution or torture. This means that the applicant must produce sufficiently convincing evidence that establishes the facts of the case, and that those facts must satisfy every element of the relevant legal standard.

*See RAIO Training Module, Evidence.*

*Matter of A-B -, 27 I&N Dec. 316, 340 (AG 2018).*

Asylum officers are required by regulation to "conduct the interview in a nonadversarial manner." The regulation also instructs asylum officers that "[t]he purpose of the [credible fear] interview shall be to elicit all relevant and useful information bearing on whether the applicant has a credible fear of persecution or torture...."

*8 C.F.R. § 208.30(d).*

An applicant's testimony is evidence to be considered and weighed along with all other evidence presented. According to the INA, the applicant's testimony may be sufficient to sustain the applicant's burden of proof if it is "credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." An applicant is a refugee only if he or she has been persecuted or has a well-founded fear of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." An applicant's testimony must satisfy all three prongs of the "credible, persuasive, and ... specific facts" test in order to establish his or her burden of proof without corroboration. An applicant may be credible, but nonetheless fail to satisfy his or her burden to establish the required elements of eligibility. "Specific facts" are distinct from statements of belief. When

*INA § 208(b)(1)(B)(ii).*

*INA § 101(a)(42)*

assessing the probative value of an applicant's testimony, the asylum officer must distinguish between fact and opinion testimony and determine how much weight to assign to any claimed facts.

INA § 208(b)(1)(B)(ii).

Under the INA, the asylum officer is also entitled to determine that the applicant must provide evidence that corroborates the applicant's testimony, even where the officer might otherwise find the testimony credible. In cases in which the asylum officer determines that the applicant must provide such evidence, the asylum officer must provide the applicant notice and the opportunity to submit evidence, and the applicant <u>must</u> provide the evidence unless the applicant cannot reasonably obtain the evidence.

INA § 235(b)(1)(B)(v); 8 C.F.R. § 208.30(e)(2); *see* RAIO Training Module, *Country Conditions Research.*

Additionally, pursuant to the statutory definition of "credible fear of persecution," the asylum officer must take account of "such other facts as are known to the officer." Such "other facts" include relevant country conditions information.

8 C.F.R. §§ 208.16(c)(3)(iii), (iv).

Similarly, country conditions information should be considered when evaluating a credible fear of torture. The Convention Against Torture and implementing regulations require consideration of "[e]vidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and [o]ther relevant information regarding conditions in the country of removal."

8 C.F.R. § 208.12(a).

The regulations instruct asylum officers as follows: "in deciding whether the alien has a credible fear of persecution or torture pursuant to § 208.30 of this part, …the asylum officer may rely on material provided by the Department of State, other USCIS offices, or other credible sources, such as international organizations, private voluntary agencies, news organizations, or academic institutions."

Thus, in evaluating the credibility of an applicant's claim to be a refugee, the asylum officer must consider information about the country from which the alien claims refugee status, such as the prevalence of torture or persecution based on race, religion, nationality, membership in a particular social group, or political opinion. Such information may be derived from several sources.

## B.   Credible Fear Standard of Proof: Significant Possibility

The party who bears the burden of proof must persuade the adjudicator of the existence of certain factual elements according to a specified standard of proof, or degree of certainty. The

relevant standard of proof specifies how convincing or probative the applicant's evidence must be.

In order to establish a credible fear of persecution or torture, the applicant must show a "significant possibility" that he or she could establish eligibility for asylum, withholding of removal, or deferral of removal.

*See* INA § 235 (b)(1)(B)(v); 8 C.F.R. §§ 208.30(e)(2), (3).

The showing required to meet the "significant possibility" standard is higher than the "not manifestly unfounded" screening standard favored by the Office of the United Nations High Commissioner for Refugees ("UNHCR") Executive Committee. **A claim that has no possibility, a minimal possibility, or a mere possibility of success would not meet the "significant possibility" standard.**

UNHCR, *A Thematic Compilation of Executive Committee Conclusions*, pp. 438-40, 6th Ed., June 2011.

In a non-immigration case, the "significant possibility" standard of proof has been described to require the person bearing the burden of proof to "demonstrate a *substantial and realistic possibility* of succeeding." While that articulation of the "significant possibility" standard was provided in a non-immigration context, the "*substantial and realistic possibility*" of success description is a helpful articulation of the "significant possibility" standard as applied in the credible fear process.

*See Holmes v. Amerex Rent-a-Car*, 180 F.3d 294, 297 (D.C. Cir. 1999) (quoting *Holmes v. Amerex Rent-a-Car*, 710 A.2d 846, 852 (D.C. Cir. 1998)) (emphasis added).

The U.S. Court of Appeals for the D.C. Circuit found that the showing required to satisfy a "substantial and realistic possibility of success" is higher than the standard of "significant evidence" but lower than that of "preponderance of the evidence."

*Id.*

In sum, the credible fear "significant possibility" standard of proof can be best understood as requiring that the applicant "demonstrate a *substantial and realistic possibility* of succeeding," or establishing eligibility for asylum, withholding of removal, or deferral of removal. The standard requires the applicant to identify more than "significant evidence" that the applicant is a refugee entitled to asylum, withholding of removal, or deferral of removal, but the applicant does not need to show that the "preponderance" or majority of the evidence establishes that entitlement.

C.   **Important Considerations in Interpreting and Applying the Standard**

1.   When conducting a credible fear interview, an asylum officer must determine what law applies to the applicant's claim. The asylum officer should apply all applicable precedents of the

8 C.F.R. § 208.30(e)(4).

*Matter of E-L-H-*, 23 I&N

Attorney General and the Board of Immigration Appeals (BIA), which are binding on all immigration judges and asylum officers nationwide, to the extent those precedents do not conflict with binding federal court precedent.[1]

Where there is disagreement among the United States Circuit Courts of Appeal as to the proper interpretation of a legal issue, the interpretation most favorable to the applicant is used when determining whether the applicant meets the credible fear standard.[2]

Dec. 814, 819 (BIA 2005); *Matter of Gonzalez*, 16 I&N Dec. 134, 135–36 (BIA 1977); *Matter of Waldei*, 19 I&N Dec. 189 (BIA 1984).

### D. Identity

The applicant must be able to establish his or her identity credibly. In many cases, an applicant will not have documentary proof of identity or nationality. However, testimony alone can establish identity and nationality if it is credible, is persuasive, and identifies specific facts. Documents such as birth certificates and passports are accepted into evidence, if available. The officer may also consider information provided by ICE or Customs and Border Protection (CBP).

*See* RAIO Training Module, *Refugee Definition.*

## VI. CREDIBILITY

### A. Credibility Standard

In making a credible fear determination, asylum officers are specifically instructed by statute to "[take] into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer."

INA § 235(b)(1)(B)(v).

The asylum officer should assess the credibility of the assertions underlying the applicant's claim to be a refugee entitled to asylum, considering the totality of the circumstances, including other statements made by the applicant, evidence of country conditions, State Department reports, and all other relevant facts and evidence, and all relevant factors.

---

[1] If the order in *Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018), is lifted, then officers must additionally follow the following guidance:

"The asylum officer should also apply the case law of the relevant federal circuit court, together with the applicable precedents of the Attorney General and the BIA. The BIA defers to precedents of the circuit in which the removal proceedings took place. *Matter of Anselmo*, 20 I. & N. Dec. 25, 31 (BIA 1989), except in certain special situations, *see id.*; *see also Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005). (holding prior judicial construction of statute trumps agency construction otherwise entitled to Chevron deference only if prior court decision holds that its construction is required by unambiguous terms of statute and leaves no room for agency discretion)."

[2] If the order in *Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018) is lifted, this policy will no longer apply. Officers will be required to apply the law in the circuit in which the alien is located.

The Board of Immigration Appeals (BIA) has explained that the burden of proof is upon an applicant for asylum to establish that the reasonable person in her circumstances would fear persecution upon return to her home country on account of one of the five grounds specified in the Act. The applicant may satisfy that burden through a combination of credible testimony and the introduction of documentary evidence and background information that supports the claim.

INA § 208(b)(1)(B)(iii); See RAIO Training Module, *Credibility; see also Matter of B-*, 21 I&N Dec. 66, 69 (BIA 1995); *Matter of Kasinga*, 21 I&N Dec. 357, 366 (BIA 1996).

**B.   Evaluating Credibility in a Credible Fear Interview**

    **1.   General Considerations**

See RAIO Training Module, *Credibility.*

        a.   The asylum officer must gather sufficient information to determine whether the alien has a credible fear of torture or persecution based on one of the five specified grounds. The applicant's credibility should be evaluated (1) only after all information is elicited, and (2) in light of "the totality of the circumstances, and all relevant factors."

        b.   The asylum officer must remain neutral and unbiased and must evaluate the record as a whole. The asylum officer's personal opinions or moral views regarding a particular applicant should not affect the officer's decision.

        c.   The applicant's ability or inability to provide specific facts supporting the main points of the claim is critical to the credibility evaluation. An applicant may claim that his or her ability to identify such facts is impacted by the context and nature of the credible fear screenings, but the INA requires the applicant to identify such facts in order to satisfy his or her burden of proof. It is the job of the asylum officer to determine whether that burden has been met.

    **2.   Properly Identifying and Probing Credibility Concerns During the Credible Fear Interview**

See RAIO Training Module, *Credibility.*

In making this determination, the asylum officer should take into account the same factors considered in evaluating credibility in the affirmative asylum context, which are discussed in the RAIO Modules: *Credibility* and *Evidence.*

Section 208 of the Act provides a non-exhaustive list of factors that may be used in a credibility determination in the asylum context. Those include the following: internal consistency;

INA § 208(b)(1)(B)(iii); *see also* RAIO Training Module,

external consistency; plausibility; demeanor; candor; and responsiveness.

*Credibility*, for a more detailed discussion of these factors.

The amount of detail provided by an applicant is another factor that should be considered in making a credibility determination. The INA requires an applicant to identify "specific facts." In order to rely on "lack of detail" as a credibility factor, however, asylum officers must specify the level of detail sought. That can be done by asking specific, probing questions that seek to elicit specific facts from the applicant.

INA § 208(b)(1)(B)(ii)

8 C.F.R. § 208.30(d).

### C. Assessing Credibility in Credible Fear when Making a Credible Fear Determination

1. In assessing credibility, the officer must consider the totality of the circumstances and all relevant factors, including any reports or data available to the officer regarding conditions in the country or region regarding which the applicant claims a fear of return. Credibility determinations must be made on a case-by-case basis, requiring the officer to consider the totality of the circumstances provided by the applicant's testimony and all relevant country conditions information available to the officer.

2. Officers should refer to all relevant country conditions reports made available to USCIS by the Department of State or other intelligence sources to assess whether the applicant's claims are credible and plausible in the regions in which the applicant claims they have or will occur, as well as to assess whether an applicant could relocate to another area of his or her home country in order to avoid the alleged persecution. If such internal relocation is reasonable, the applicant does not have a credible fear of persecution. Claims that are inconsistent with country conditions reports or are indicative of "boilerplate" language used in credible fear claims by applicants in different proceedings might be valid indications of fraud supporting an adverse credibility finding, although the applicant should be given the opportunity to explain.

*See Matter of R-K-K-*, 26 I&N Dec. 658 (BIA 2015).

3. The asylum officer should follow up on all credibility concerns during the interview by making the applicant aware of each concern, and the bases for questioning the applicant's testimony. The officer should give the applicant an opportunity to explain all concerns during the credible fear interview.

*See RAIO Training Module, Credibility.*

4. As recommended by Congress in enacting the REAL ID Act of 2005, in making credibility determinations, asylum officers should "rely on those aspects of demeanor that are indicative of truthfulness or deception...[and] a credibility determination

H. Rept. No. 109-72.

AILA Doc. No. 19050602. (Posted 8/6/19)

should follow an examination of all relevant circumstances, including the circumstances of the individual applicant."

5. Inconsistencies between the applicant's initial statement to the CBP or ICE official and his or her testimony before the asylum officer must be probed during the interview. Such inconsistencies may provide support for a negative credibility finding when taking into account the totality of the circumstances and all relevant factors.

*See* 8 C.F.R. § 235.3(b)(4) (stating that if an applicant indicates an intention to apply for asylum, or expresses a fear of persecution or torture, or a fear of return to his or her country, the "examining immigration officer shall record sufficient information in the sworn statement to establish and record that the alien has indicated such intention, fear, or concern," and should then refer the alien for a credible fear interview).

The sworn statement completed by CBP (Form I-867A/B) does not always record detailed information about any fear of persecution or torture or other general information, such as the reason the individual came to the United StatesHowever, the asylum officer may find that the CBP officer did, in fact, gather additional information from the applicant regarding the nature of his or her claim. In such cases, the applicant's prior statements should inform the asylum officer's line of questioning in the credible fear interview, and any inconsistencies between those prior statements and the statements made during the credible fear interview should be probed and assessed in determining the applicant's credibility.[3]

*Matter of J-C-H-F-,* 27 I&N Dec. 211 (BIA 2018).

---

[3] If the order in *Grace v. Whitaker,* 344 F. Supp. 3d 96 (D.D.C. 2018), is lifted, then officers must additionally follow the following guidance:

A number of federal courts have cautioned adjudicators to keep in mind the circumstances under which an alien's statement to a CBP official is taken when considering whether an applicant's later testimony is consistent with the earlier statement. For instance, the Seventh Circuit noted that "'airport interviews…are not always reliable indicators of credibility.'" In addition, the Fourth Circuit identified the different purposes of CBP's interview for the sworn statement and the asylum process: "the purpose of these [sworn statement] interviews is to collect general identification and background information about the alien. The interviews are not part of the formal asylum process. *See, e.g. Balasubramanrim v. INS,* 143 F.3d 157 (3d Cir. 1998); *Lin Lin Tang v. U.S. Att'y Gen.,* 578 F.3d 1270, 1279-80 (11th Cir. 2009); *cf. Ye Jian Xing v. Lynch,* 845 F.3d 38, 44-45 (1st Cir. 2017) (while not requiring specifically enumerated factors for examining the reliability of the sworn statement, noting that an interpreter was used and Ye understood the questions asked); *Joseph v. Holder,* 600 F.3d 1235, 1243 (9th Cir. 2010) (in examining statements in a prior bond hearing, noting, "[w]e have rejected adverse credibility findings that relied on differences between statements a petitioner made during removal proceedings and those made during less formal, routinely unrecorded proceedings.").

Some factors to keep in mind include: 1) whether the questions posed at the port of entry or place of apprehension were designed to elicit the details of an asylum claim, and whether the immigration officer asked relevant follow-up questions; 2) whether the alien was reluctant or afraid to reveal information during the first meeting with U.S. officials because of past abuse; and 3) whether the interview was conducted in a language other than the applicant's native language. *Ramsameachire v. Ashcroft,* 357 F.3d 169, 179-81 (2d Cir. 2004) (holding that the BIA was entitled to rely on fundamental inconsistencies between the applicant's airport interview statements and his hearing testimony where the applicant was provided with an interpreter, given ample opportunity to explain his fear of persecution in a careful and non-coercive interview, and signed and initialed the typed record of statement).

The Second Circuit has advised: "If, after reviewing the record of the [CBP] interview in light of these factors and any other relevant considerations suggested by the circumstances of the interview, the … [agency] concludes that the record of the interview and the alien's statements are reliable, then the agency may, in appropriate

---

U.S. CITIZENSHIP AND IMMIGRATION SERVICES – RAIO
APRIL 30, 2019
ASYLUM DIVISION OFFICER TRAINING COURSE
CREDIBLE FEAR OF PERSECUTION AND TORTURE DETERMINATIONS
16

AILA Doc. No. 19080566. (Posted 8/16/19)

*Id.* at 212-213.

### D.  Documenting a Credibility Determination

1.  The asylum officer must clearly record in the interview notes the questions used to inform the applicant of any relevant credibility issues and the applicant's responses to those questions.

2.  The officer must specify in the written case analysis the basis for the credibility finding, including a summary of the material facts as stated by the applicant, any additional facts relied on by the officer, and the officer's determination of whether, in light of such facts, the alien has established a credible fear.  In the case of a positive credibility determination, the officer should note any specific portions of testimony that contributed to the officer's overall credibility determination, including specificity of the presentation, consistency with corroborating evidence submitted or country condition reports available and any other factors about the applicant's narrative, demeanor, or presentation that weighed in favor of a positive credibility determination.  In the case of a negative credibility determination, the officer should note any portions of the testimony found not credible, including the specific inconsistencies, lack of detail, or other factors, along with the applicant's explanation and the basis for determining that the explanation is deemed not to be reasonable.

8 C.F.R §§. 208.30(d)(7), (e)(1).

3.  If information that impugns the applicant's testimony becomes available after the interview but prior to serving the credible fear determination, a follow-up interview should be scheduled to confront the applicant with the derogatory information and to provide the applicant with an opportunity to address the adverse information.

---

circumstances. use those statements as a basis for finding the alien's testimony incredible. Conversely, if it appears that either the record of the interview or the alien's statements may not be reliable, then the … [agency] should not rely solely on the interview in making an adverse credibility determination."

All reasonable explanations must be considered when assessing the applicant's credibility. The asylum officer need not credit an unreasonable explanation.

If, after providing the applicant with an opportunity to explain or resolve any credibility concerns, the officer finds that the applicant has provided a reasonable explanation, for inconsistencies between prior statements and statements made at the credible fear interview, those inconsistencies alone need not preclude a positive credibility determination when considering the totality of the circumstances and all relevant factors.

If, however, after providing the applicant with an opportunity to explain or resolve any credibility concerns, the applicant fails to provide an explanation for such inconsistencies. or the officer finds that the applicant did not provide a reasonable explanation, a negative credibility determination based upon the totality of the circumstances and all relevant factors will generally be appropriate.

## VII. ESTABLISHING A CREDIBLE FEAR OF PERSECUTION

<div style="float:right; width:30%;">

For the most recent Asylum Division guidance on eligibility for asylum under section 208 of the INA, please consult the latest applicable RAIO Training Module.

</div>

### A.   General Considerations in Credible Fear

INA § 235(b)(1)(B)(v); 8 C.F.R. § 208.30(e)(2).

An applicant will be found to have a credible fear of persecution if there is a significant possibility the applicant can establish eligibility for asylum as a refugee under section 208 of the Act or withholding of removal under section 241(b)(3) of the Act or deferral of removal, if the applicant subject to the mandatory denial of withholding of removal.

8 C.F.R. § 208.13(b)(1).

1.   In general, findings by the asylum officer that (1) there is a significant possibility – that is, a substantial and realistic possibility based on more than significant evidence – that the applicant experienced past persecution on account of a protected characteristic,  (2) the conditions that gave rise to such persecution continue to exist in the applicant's home country, and (3) the applicant could not avoid such persecution by relocating within his or her home country, are sufficient to satisfy the credible fear standard.

*See* 8 C.F.R. § 208.13(b)(1)(iii)(B), (b)(3).

However, if the evidence does not establish a significant possibility of future persecution, or other serious harm or compelling reasons for being unwilling or unable to return to the applicant's home country given the severity of past persecution, or reasons why internal relocation is not possible, a negative credible fear determination is appropriate.[4]

2.   In cases in which an applicant does not claim to have suffered any past persecution, or in which the evidence is insufficient to establish a significant possibility of past persecution under section 208 of the Act, the asylum officer must determine whether there is a significant possibility the applicant could establish a well-founded fear of persecution on account of a protected characteristic under section 208 of the Act.  An applicant establishes that he or she has a well-founded fear of

*See* RAIO Training Modules, *Persecution* and *Well-Founded Fear of Persecution*.

---

4 Only aliens who have been found to have suffered past persecution are eligible for a grant of asylum based on "other serious harm." *See* 8 C.F.R. § 208.13(b)(1)(iii).  If the alien demonstrates past persecution, he or she can be granted asylum if: (1) the applicant has also demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of past persecution or if (2) the applicant has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country.  Thus, if an alien establishes a significant possibility that he or she has suffered past persecution and either of the conditions described above exist, the alien could establish a credible fear of persecution.

persecution if a reasonable person in the applicant's circumstances would fear persecution upon return to his or her country of origin.

**B.   Past Persecution/Well-Founded Fear of Future Persecution**

1.   <u>Elements Required to Establish a Credible Fear</u>: In order to establish a credible fear of persecution, the applicant must establish each one of the elements below, to the satisfaction of the asylum officer.  If the applicant is not able to establish all of the elements, the applicant must receive a negative credible fear determination.

*See* RAIO Training Module, *Well Founded Fear.*

2.   <u>Severity of Harm</u>: For a credible fear of persecution, there must be a significant possibility the applicant can establish that the harm the applicant has experienced or fears he or she will experience if returned to his or her home country is sufficiently serious to amount to persecution.

3.   <u>Future Fear (Well-Founded Fear)</u>: Well-founded Fear of Persecution

*INS v. Cardoza-Fonseca,* 480 U.S. 421, 430-31 (1987).

    a.   In cases in which an applicant does not claim to have suffered any past harm, or in which the evidence is insufficient to establish a significant possibility of past persecution on account of a protected characteristic under section 101(a)(42)(A) of the Act, the asylum officer must determine whether there is a significant possibility the applicant could establish a well-founded fear of persecution under section 208 of the Act.

*See* RAIO Training Module, *Well Founded Fear,* for more detailed information about the subjective and objective elements of well-founded fear, including the standards of proof needed to establish these elements. *See also INS v. Cardoza-Fonseca,* 480 U.S. 421, 431 (1987).

    b.   To establish a well-founded fear of persecution on account of a protected characteristic. an applicant must show that (1) he or she has a subjective fear of persecution, and (2) that such fear has an objective basis.

*See* RAIO Training Modules, *Nexus and the Protected Grounds (minus PSG)* and *Nexus – Particular Social Group.*

    c.   The applicant satisfies the subjective element if he or she credibly articulates a genuine fear of return.  Fear has been defined as an apprehension or awareness of danger.

*See Matter of Kasinga,* 21 I&N Dec. 357, 366-67 (BIA 1996); *Pitcherskaia v. INS,* 118 F.3d 641 (9th Cir. 1997).

    d.   The applicant satisfies the objective element if he or she demonstrates past persecution based on continuing country conditions, or has a "well-founded fear" of persecution.  An applicant has a well-founded fear of persecution if a reasonable

*See* RAIO Training Module, *Well Founded Fear.*

AILA Doc. No. 19050602. (Posted 5/6/19)

person in the applicant's circumstances would fear persecution upon return to his or her country of origin.

The Supreme Court concluded that the standard for establishing the likelihood of future harm in asylum is lower than the standard for establishing likelihood of future harm in withholding of deportation: "One can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place."

*480 U.S. at 431.*

To make the point, *Cardoza-Fonseca* used the following example: "In a country where every tenth adult male is put to death or sent to a labor camp, 'it would be only too apparent that anyone who has managed to escape from the country in question will have 'well-founded fear of being persecuted' upon his eventual return.'"

*Id.* at 440.

*Id.* at 448.

*Cardoza-Fonseca* did *not*, however, hold that "well-founded fear" always equals a ten percent chance. Instead, *Cardoza-Fonseca* deemed the term "ambiguous," and explicitly declined to set forth guidance on how the well-founded fear test should be applied. The Court merely held that the government was "incorrect in holding that the two standards [i.e., well-founded fear and clear probability] are identical" and invited the affected *agencies* to expound on the meaning of "well-founded fear."

*Id.* at 448 (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 843 (1984)).

*Id.* at 448.

*Cardoza-Fonseca*'s extreme example of every tenth adult male being put to death or sent to a labor camp may well satisfy this standard in a particular case (assuming that all other requirements are met, including nexus), but officers must bear in mind the unusual severity of this example. While the *Cardoza-Fonseca* example seems simple, the Court describes an extremely unusual and high murder rate of 10 percent of adult males. It is important for officers to note that such rate is extraordinarily high and incredibly rare. Indeed, it is significantly higher than the murder rates in countries with even the highest rates of violence. Additionally, the asylum officer must determine whether the applicant's testimony supports an objective finding that the applicant, himself or herself, will be persecuted, which requires a more extensive analysis than

whether persecution is occurring at all in the country of origin. In doing that, the asylum officers must also determine whether any objective fear claimed by the applicant is credible. The officer may well find that a claimed rate of 10% chance of persecution, in light of the applicant's statements and the country conditions available to the officer, is not credible. It is important to note also that rarely will an applicant be able to demonstrate, with certainty, the rates of people being persecuted countrywide.

After *Cardoza-Fonseca*, neither the Board of Immigration Appeals nor DHS has definitively resolved how much fear is "well-founded." There is thus no single, binding interpretation of *Cardoza-Fonseca*'s discussion of "well-founded fear," including its suggestions about a one-in-ten chance.

Thus, the determination of whether a fear is well-founded does not ultimately rest on the statistical probability of persecution, which is almost never available. Rather, the determination rests on whether the applicant's fear is based on facts that would lead a reasonable person in similar circumstances to fear persecution.

4. <u>Motivation</u>: For a credible fear of persecution, the applicant must establish that there is a significant possibility that the persecutor was or will be motivated to harm him or her on account of his or her race, religion, nationality, membership in a particular social group, or political opinion.

*INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992).

    a. Nexus analysis requires officers to determine the following: (1) whether the applicant possesses or is perceived to possess a protected characteristic; and (2) whether the persecution or feared persecution is at least in part on account of that protected characteristic.

    b. There must be a significant possibility that at least one reason motivating the persecutor is the applicant's possession or perceived possession of a protected characteristic. [5]

---

[5] If the injunction in *Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018), is lifted, then officers must instead follow the following guidance:

There must be a significant possibility that at least *one central* reason motivating the persecutor is the applicant's

U.S. CITIZENSHIP AND IMMIGRATION SERVICES – RAIO    ASYLUM DIVISION OFFICER TRAINING COURSE
APRIL 30, 2019    CREDIBLE FEAR OF PERSECUTION AND TORTURE DETERMINATIONS
AILA Doc. No. 20080839. (Posted 8/7/20)
21

c.   Particular Social Groups:

To determine whether the applicant belongs to a legally viable particular social group where there are no precedent decisions on point, asylum officers must analyze the facts using the immutability requirement described in *Matter of Acosta*.  The group must comprise individuals who share a common, immutable characteristic, which is either a characteristic that members cannot change or is a characteristic that is so fundamental to the member's identity or conscience that he or she should not be required to change it.[6]

5.   Persecutor: For a credible fear of persecution, there must be a significant possibility the applicant can establish that the entity that harmed the applicant (the persecutor) is either an agent of the government or an entity that the government is unable or unwilling to control.

Asylum officers must recognize that no government can guarantee the safety of each of its citizens or control all potential persecutors at all times.  It is not sufficient for an applicant to

*Matter of A-B-*, 27 I&N Dec. 316, 320, 337-38, 343-44 (AG 2018), *enjoined in part by Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018) (holding that *Matter of A-B-* raised the standard for "unable or willing" and

---

possession or perceived possession of a protected characteristic. In the Ninth Circuit, the alien need only establish a significant possibility that at least *a* reason motivating the persecutor is the applicant's possession or perceived possession of a protected characteristic. *Barajas-Romero v. Lynch*, 846 F.3d 351 (9th Cir. 2017).

[6] If the injunction in *Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018), is lifted, then officers must instead follow the following guidance:

To determine whether the applicant belongs to a viable particular social group where there are no precedent decisions on point, asylum officers must analyze the facts using the BIA test for evaluating whether a group meets the definition of a particular social group, which is the immutability requirement described in *Matter of Acosta*:

First, the group must comprise individuals who share a common, immutable characteristic, which is either a characteristic that members cannot change or is a characteristic that is so fundamental to the member's identity or conscience that he or she should not be required to change it.

Second, the group must be defined with particularity; it "must be defined by characteristics that provide a clear benchmark for determining who falls within the group." A group is particular if the "group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons." A particular social group must not be "amorphous, overbroad, diffuse, or subjective," and "not every 'immutable characteristic' is sufficiently precise to define a particular social group."

Third, the group must be socially distinct within the society in question.  Social distinction involves examining whether "those with the characteristic in the society in question would be meaningfully distinguished from those who do not have it." In other words, "[m]embers of a particular social group will generally understand their own affiliation with that group, as will other people in their country." Social distinction relates to society's, not the persecutor's, perception, though the persecutor's perceptions may be relevant to social distinction. *See Matter of A-B-*, 27 I&N Dec. 316, 320 (AG 2018); *Matter of M-E-V-G-*, 26 I&N Dec. 227 (BIA 2014); *Matter of W-G-R-*, 26 I&N Dec. 208 (BIA 2014).

---

assert that the government lacks sufficient resources to address criminal activity. Rather, the government must have abdicated its responsibility to control persecution. A determination of whether a government is unable to control the entity that harmed the applicant requires evaluation of country of origin information and the applicant's circumstances. For example, a government in the midst of a civil war or one that is unable to exercise its authority over portions of the country might be unable to control the persecutor in areas of the country where its influence does not extend. Asylum officers must consult all available and salient information, including the objective country conditions set forth in Department of State country reports. In order to establish a significant possibility of past persecution, the applicant is not required to demonstrate that the government was unable or unwilling to control the persecution on a nationwide basis. The applicant may meet his or her burden with evidence that the government was unable or unwilling to control the persecution to which the applicant was subject.

*enjoining that change), appeal filed, No. 19-5013 (D.C. Cir. Jan. 30, 2019).*

6. <u>Applicant Did Not Remain in Country after Threats or Harm</u>

    a. A significant lapse of time between the occurrence of incidents that form the basis of the claim and an applicant's departure from the country may be evidence that the applicant's fear is not well-founded. The lapse of time may indicate that the applicant does not possess a genuine fear of harm, or the persecutor does not possess the ability or the inclination to harm the applicant.

    b. However, there may be valid reasons why the applicant did not leave the country for a significant amount of time after receiving threats or being harmed, including the following: lack of funds to arrange for departure from the country and time to arrange for the safety of family members; belief that the situation would improve; promotion of a cause within the home country; and temporary disinclination by the persecutor to harm the applicant.

7. <u>Applicant Has Not Acted Inconsistent with Subjective Fear of Persecution</u>

    An applicant's return to the country of feared persecution generally weakens the applicant's claim of a well-founded fear of persecution. It may indicate that the applicant does not possess a genuine

(subjective) fear of persecution, or that the applicant's fear is not objectively reasonable.

8. **Internal Relocation**

a. In cases in which the feared persecutor is a government or is government-sponsored, there is a presumption that there is no reasonable internal relocation option. That presumption may be overcome if a preponderance of the evidence shows that, under all of the circumstances, the applicant could avoid future persecution by relocating to another part of the applicant's country, and that it would be reasonable to expect the applicant to relocate. Asylum officers must consult all available and salient information, including information in the objective country conditions set forth in Department of State country reports.

*8 CFR 208.13(b)(1)(i)(B), (b)(2)(ii), (b)(3); Matter of M-Z-M-R-, 26 I&N Dec. 28 (BIA 2012).*

b. If the persecutor is a non-governmental entity, there must be a significant possibility that the applicant cannot reasonably internally relocate within his or her country. In cases in which the persecutor is a non-governmental entity and the applicant has not established past persecution, the applicant has the burden of establishing that internal relocation is not reasonable.

c. In assessing an applicant's well-founded fear and internal relocation, apply the following two-step approach:

*8 C.F.R. § 208.13(b)(3)(i).*

(i) Determine whether an applicant could avoid future persecution by relocating to another part of the applicant's home country. If the applicant will not be persecuted in another part of the country, then:

(ii) Determine whether an applicant's relocation, under all of the circumstances, would be reasonable. Some factors that could be considered—but are in no way controlling or determinative—are listed in 8 C.F.R. § 208.13(b)(3).

**C.  Multiple Citizenship**

Persons holding multiple citizenship or nationalities must demonstrate a credible fear of persecution or torture from at least one country in which they are a citizen or national to be eligible for referral to immigration court for a full asylum or withholding of removal hearing.  If the country of removal indicated is different from the applicant's country of citizenship or nationality, fear from the indicated country of removal must also be evaluated.

In addition, if the applicant raises a fear with respect to another country, aside from the country of citizenship or nationality or the country of removal, the officer should memorialize it in the file to ensure that the fear is explored in the future if DHS ever contemplates removing the person to such other country.

**D.  Statelessness/Last Habitual Residence**

The asylum officer does not need to make a determination of whether an applicant is stateless or the applicant's country of last habitual residence.  The asylum officer should determine whether the applicant has a credible fear with respect to any country of proposed removal.  If the applicant demonstrates a credible fear with respect to any country of proposed removal, regardless of citizenship or habitual residence, the applicant should be referred to the Immigration Judge for a full proceeding, because he or she may be eligible for withholding of removal with respect to that country.

## VIII.  ESTABLISHING A CREDIBLE FEAR OF TORTURE

An applicant will be found to have a credible fear of torture if the applicant establishes that there is a significant possibility that he or she is eligible for withholding of removal or deferral of removal under 8 C.F.R. §§ 208.16 or 208.17, the regulations issued pursuant to the legislation implementing the Convention Against Torture (CAT).  In order to be eligible for withholding or deferral of removal under CAT, an applicant must establish that it is more likely than not that he or she would be tortured in the country of removal.  The credible fear process is a "screening mechanism" that attempts to identify whether there is a significant possibility that an applicant can establish that it is more likely than not that he or she would be tortured in the country in question.

In the CAT withholding or deferral of removal hearing, the applicant will have to establish that it is more likely than not that he or she will be tortured in the country of removal.  As discussed

*See* RAIO Training Module, *Refugee Definition,* for more detailed information about determining an applicant's nationality, dual nationality, and statelessness.

*See* ADOTC Lesson Plan, *Reasonable Fear of Persecution and Torture Determinations* for a detailed discussion of the background of CAT and legal elements of the definition of torture; Immigration and Naturalization Service, *Regulations Concerning the Convention Against Torture,* 64 Fed. Reg. 8478, 8484 (Feb. 19, 1999).

above, for asylum the applicant must establish either past persecution or a well-founded fear of persecution. Well-founded fear is a lower standard than "more likely than not."

**Therefore a significant possibility of establishing eligibility for CAT withholding or deferral of removal is necessarily a greater burden than establishing a significant possibility of eligibility for asylum.** In other words, to establish a credible fear of torture, the applicant must show there is a significant possibility that he or she could establish in a full hearing that it is more likely than not he or she would be tortured in that country.

## A.   Definition of Torture

8 C.F.R. § 208.18(a) defines "torture" as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."

> 8 C.F.R. § 208.18(a); *see* ADOTC Lesson Plan, *Reasonable Fear of Persecution and Torture Determinations.*

## B.   General Considerations

1.   U.S. regulations require that several elements be met before an act is found to constitute torture.

> 8 C.F.R. §§ 208.18(a)(1)-(8). Immigration and Naturalization Service, *Regulations Concerning the Convention Against Torture,* 64 Fed. Reg. 8478 (Feb. 19, 1999).

2.   After establishing that the applicant's claim is credible, the applicant satisfies the other elements of the credible fear of torture standard where there is a significant possibility that he or she could establish in a full withholding of removal hearing that:

> *See* section VI., *Credibility,* above, regarding establishing credibility. An adverse credibility determination on the persecution claim does not necessarily defeat a claim made under the Convention Against Torture. *Camara v. Ashcroft,* 378 F.3d 361 (4th Cir. 2004); *Kamalthus v. INS,* 251 F.3d 1279, 1284 (9th Cir. 2001); *Mansour v. INS,* 230 F.3d 902 (7th Cir. 2000. *Matter of J-E-,* 23 I&N Dec.

a.   The torturer specifically intends to inflict severe physical or mental pain or suffering;

b.   The harm constitutes severe pain or suffering;

c.   The torturer is a public official or other person acting in an official capacity, or someone acting at the instigation of or with the consent or acquiescence of

|  | a public official or someone acting in official capacity; and | 291 (BIA 2002). |
|  |  | 8 C.F.R. § 208.18(a)(5). |
| d. | The applicant is in the torturer's custody or physical control. | 8 C.F.R. § 208.18(a)(2). |

Torture does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions, including the death penalty and other judicially imposed sanctions. However, sanctions that defeat the object and purpose of the Convention are not lawful sanctions. Harm arising out of such sanctions may constitute torture.

3. The Convention Against Torture <u>does not</u> require that the torture be connected to any of the five protected characteristics identified in the definition of a refugee, or any other characteristic the individual possesses or is perceived to possess.

8 C.F.R. § 208.18(a)(6).

8 C.F.R. § 208.18(a)(3).

## C. Specific Intent

For an act to constitute torture, the applicant must establish that it is more likely than not that the act is specifically intended to inflict severe physical or mental pain or suffering. An intentional act that results in unanticipated and unintended severity of pain and suffering is not torture under the Convention definition.

8 C.F.R. §§ 208.18(a)(1), (5).

Specific intent is "intent to accomplish the precise criminal act that one is later charged with" while "general intent" commonly "takes the form of recklessness . . . or negligence."

*Matter of J-E-*, 23 I&N Dec. 291, 301 (BIA 2002) (citing Black's Law Dictionary 813-14 (7th ed. 1999).

## D. Degree of Harm

1. For harm to constitute torture, the applicant must establish that it is more likely than not that the harm rises to the level of severity of torture.

2. Torture requires severe pain or suffering, whether physical or mental. "Torture" is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture. Therefore, many forms of harm that may be considered persecution may not be considered severe enough to amount to torture.

8 C.F.R. § 208.18(a)(1); 8 C.F.R. § 208.18(a)(2).

3. For mental pain or suffering to constitute torture, the mental pain must be prolonged mental harm caused by or resulting from:

a. The intentional infliction or threatened infliction of severe physical pain or suffering;

8 C.F.R. § 208.18(a)(4).

U.S. CITIZENSHIP AND IMMIGRATION SERVICES – RAIO
APRIL 30, 2019
ASYLUM DIVISION OFFICER TRAINING COURSE
CREDIBLE FEAR OF PERSECUTION AND TORTURE DETERMINATIONS
27

AILA Doc. No. 19050602. (Posted 5/6/19)

b.  The administration or application, or threatened administration or application, of mind altering substances or other procedures calculated to disrupt profoundly the senses or the personality;

c.  The credible threat of imminent death; or

d.  The credible threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind altering substances or other procedures calculated to disrupt profoundly the senses or personality.

**E.  Identity of the Torturer**

1.  For an act to constitute torture, the applicant must establish that it is more likely than not that the harm he or she fears would be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."

8 C.F.R. § 208.18(a)(1).

*See* ADOTC Lesson Plan, *Reasonable Fear of Persecution and Torture Determinations* for a more extensive discussion on this element of CAT eligibility.

2.  Harm by a Public Official

The term "public official" can include any person acting on behalf of a national or local authority or any national or local government employee regardless whether the official is acting in their official or personal capacity.[7]

3.  Instigation, Consent, or Acquiescence

a.  When the "torturer" is not a public official, a successful CAT claim requires that a public official or other person acting in an official capacity instigates, consents, or acquiesces to the torture. Asylum officers must consult all available and salient information, including information in the

---

[7] If the injunction in *Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018), is lifted, then officers must instead follow the following guidance:

In the withholding or deferral of removal setting, when a public official acts in a wholly private capacity, outside any context of governmental authority, the state action element of the torture definition may not be satisfied depending on the circuit. On this topic, the Second Circuit provided that, "[a]s two of the CAT's drafters have noted, when it is a public official who inflicts severe pain or suffering, it is only in exceptional cases that we can expect to be able to conclude that the acts do not constitute torture by reason of the official acting for purely private reasons." *Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir. 2004) (emphasis added). Meanwhile, the Ninth Circuit has held that the public official need not be acting on behalf of the government. *Barajas-Romero v. Lynch*, 846 F.3d 351 (9th Cir. 2017).

---

objective country conditions set forth in Department of State country reports.

b.  Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity.

8 C.F.R. § 208.18(a)(7).

The Senate ratification history for the Convention explains that the term "awareness" was used to clarify that government acquiescence may be established by evidence of *either* actual knowledge or willful blindness. "Willful blindness" imputes knowledge to a government official who has a duty to prevent misconduct and "deliberately closes his eyes to what would otherwise have been obvious to him."

8 C.F.R. § 208.18(a)(7).

c.  There is no acquiescence when law enforcement does not breach a legal responsibility to intervene to prevent torture.

In the context of government consent or acquiescence, the court in *Ramirez-Peyro v. Holder* reiterated its prior holding that "use of official authority by low level officials, such a[s] police officers, can work to place actions under the color of law even when they act without state sanction." Therefore, even if country conditions show that a national government is fighting against corruption, that fact will not necessarily preclude a finding of consent or acquiescence by a local public official.

*Ramirez-Peyro v. Holder*, 574 F.3d 893, 901 (8th Cir. 2009).

*See Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 354-55 (5th Cir. 2002).

d.  Evidence that private actors have general support in some sectors of the government, without more, is insufficient to establish that the officials would acquiesce to torture by the private actors.

4.  Consent or Acquiescence vs. Unable or Unwilling to Control

The public official requirement under CAT is distinct from the inquiry into a government's ability or willingness to control standard applied under the refugee definition.

*Reyes-Sanchez v. U.S. Atty. Gen.*, 369 F.3d 1239 (11th Cir. 2004) ("That the police did not catch the culprits does not mean that they acquiesced in the harm.")

a.  A finding that a government is unable to control a particular person(s) is not dispositive of whether a

public official would instigate, consent to, or acquiesce in the feared torture.

b. A more relevant query is whether a public official who has a legal duty to intervene would be unwilling to do so. In that circumstance, the public official would also have to be aware or deliberately avoid being aware of the harm in order for the action or inaction to qualify as acquiescence under CAT.

## F. Past Harm

Unlike a finding of past persecution, a finding that an applicant suffered torture in the past does not raise a *presumption* that it is *more likely than not* the applicant will be subject to torture in the future. However, regulations require that any past torture be *considered* in evaluating whether the applicant is likely to be tortured, because an applicant's experience of past torture may be *probative* of whether the applicant would be subject to torture in the future.

8 C.F.R. § 208.16(c)(3)(i); Immigration and Naturalization Service, *Regulations Concerning the Convention Against Torture*, 64 Fed. Reg. 8478, 8480 (Feb. 19, 1999).

Credible evidence of past torture is strong evidence in support of a claim for protection based on fear of future torture. For that reason, an applicant who establishes that he or she suffered past torture also establishes a credible fear of torture, unless changes in circumstances are so substantial that the applicant has no significant possibility of future torture as a result of the change.

## G. Internal Relocation

1. Regulations require immigration judges to consider evidence that the applicant could relocate to another part of the country of removal where he or she is not likely to be tortured, in assessing whether the applicant can establish that it is more likely than not that he or she would be tortured. Therefore, asylum officers should consider whether or not the applicant could safely relocate to another part of his or her country in assessing whether there is a significant possibility that he or she is eligible for CAT withholding of removal or deferral of removal. Asylum officers must consult all available and salient information, including the objective country conditions set forth in Department of State country reports.

8 C.F.R. § 1208.16(c)(3)(ii).

2. Unlike the persecution context, the regulations implementing CAT do not explicitly reference the need to evaluate the reasonableness of internal relocation.

8 C.F.R. § 208.16(c)(3)(ii).

AILA Doc. No. 19050602. (Posted 5/6/19)

Nonetheless, the regulations provide that "all evidence relevant to the possibility of future torture shall be considered...." Therefore, asylum officers should apply the same reasonableness inquiry articulated in the persecution context to the CAT context.

8 C.F.R. § 208.13(b)(3);
*See* RAIO Training Module,
*Well Founded Fear.*

## IX. APPLICABILITY OF BARS TO ASYLUM AND WITHHOLDING OF REMOVAL

Please consult the appropriate RAIO Training Module for a full discussion on mandatory bars.

### A. No Bars Apply

Pursuant to regulations, evidence that the applicant is, or may be, subject to a bar to asylum or withholding of removal does not have an impact on a credible fear finding.

8 C.F.R. § 208.30(e)(5).

### B. Asylum Officer Must Elicit Testimony

Even though the bars to asylum do not apply to the credible fear determination, the interviewing officer must elicit and make note of all information relevant to whether a bar to asylum or withholding applies or not. The immigration judge is responsible for finally adjudicating whether or not the applicant is barred from receiving asylum or withholding of removal.

INA § 208(b)(2); INA § 241(b)(3); 8 C.F.R. § 208.30(d)

There are no bars to a grant of deferral of removal to a country where the applicant would be tortured.

8 C.F.R. § 208.17(a).

Information should be elicited about whether the applicant:

1.  Participated in the persecution of others;

2.  Has been convicted by a final judgment of a particularly serious crime (including an aggravated felony), and constitutes a danger to the community of the United States;

INA § 208(b)(2)(B)(i).

3.  Is a danger to the security of the United States;

4.  Is subject to the inadmissibility or deportability grounds relating to terrorist activity as identified in INA section 208(b)(2)(A)(v);

5.  Has committed a serious nonpolitical crime;

6.  Is a dual or multiple national who can avail himself or herself of the protection of a third state; and,

This bar and the firm resettlement bar are not bars to withholding or deferral of

7. Was firmly resettled in another country prior to arriving in the United States.

## C. Flagging Potential Bars

The officer must keep in mind that the applicability of those bars requires further evaluation that will take place in the full hearing before an immigration judge if the applicant otherwise has a credible fear of persecution or torture. In such cases, the officer should consult a supervisory officer, follow procedures on "flagging" such information for the hearing, and prepare the appropriate paperwork for a positive credible fear finding. Officers may be asked to prepare a memorandum to file outlining the potential bar that may be triggered. Although positive credible fear determinations that involve a possible mandatory bar no longer require USCIS-HQ review, supervisory officers may use their discretion to forward the case to USCIS-HQ for review.

*removal. See INA § 241(b)(3).*

Procedures Manual, Credible Fear Process (Draft); Joseph E. Langlois. Asylum Division, Refugee, Asylum and International Operations Directorate. *Revised Credible Fear Quality Assurance Review Categories and Procedures,* Memorandum to Asylum Office Directors, et al. (Washington, DC: 23 Dec. 2008).

## X. OTHER ISSUES

### A. Treatment of Dependents

8 C.F.R. § 208.30(b).

A spouse or child of an applicant may be included in the alien's credible fear evaluation and determination, if the spouse or child arrived in the United States concurrently with the principal alien and desires to be included in the principal alien's determination. USCIS maintains discretion under this regulation not to allow a spouse or child to be included in the principal's credible fear request.

Any alien also has the right to have his or her credible fear evaluation and determination made separately, and it is important for asylum pre-screening officers to question each member of the family to be sure that, if any member of the family has a credible fear, his or her right to apply for asylum or protection under CAT is preserved. When questioning family members, special attention should be paid to the privacy of each family member and to the possibility that victims of domestic abuse, rape, and other forms of persecution might not be comfortable speaking in front of other family members.

The regulatory provision that allows a dependent to be included in a principal's determination does not change the statutory rule

that any alien subject to expedited removal who has a credible
fear has the right to be referred to an immigration judge.

### B.   Attorneys and Consultants

8 C.F.R. § 208.30(d)(4).

The applicant may consult with any person prior to the credible
fear interview. The applicant is also permitted to have a
consultant present at the credible fear interview. Asylum
officers should determine whether or not an applicant wishes to
have a consultant present at the credible fear interview.
Although an alien is permitted by regulation to have a consultant
present at a credible fear interview, the availability of a
consultant cannot unreasonably delay the process. A consultant
may be a relative, friend, clergy person, attorney, or
representative. If the consultant is an attorney or representative,
he or she is not required to submit a Form G-28, *Notice of Entry
of Appearance as Attorney or Accredited Representative*, but
may submit one if he or she desires.

8 C.F.R. § 208.30(d)(4);
Procedures Manual, Credible
Fear Process (Draft).

### C.   Factual Summary

8 C.F.R. § 208.30(d)(6).

For each credible fear interview, the asylum officer must create
a summary of material facts as stated by the applicant. At the
conclusion of the interview, the asylum officer must review the
summary with the applicant and provide to the applicant an
opportunity to correct any errors therein. The factual summary
and its review should be contemporaneously recorded at the end
of the asylum officer's interview notes.

### D.   No General Presumptions Against Certain Types of Cases.

*Matter of A-B-*, 27 I&N Dec.
316 (AG 2018).

Each claim must be evaluated on its own merits. Therefore,
there is no general presumption against officers recognizing
any particular type of fear claim.

For example, there is no general rule against claims involving
domestic violence and gang-related violence as a basis for
membership in a particular social group. Similarly, there is no
general rule that proposed particular social groups whose
definitions involve an inability to leave a domestic relationship
are circular and therefore not cognizable. While a particular
social group cannot be defined exclusively by the claimed
persecution, each particular social group should be evaluated
on its own merits. If the proposed social group definition
contains characteristics independent from the feared
persecution, the group may be valid. Analysis as to whether a
proposed particular social group is cognizable should take into
account the independent characteristics presented in each case.

See *Matter of M-E-V-G-*, 26
I&N Dec. 227, 242 (BIA
2014).

E.   **No Need for the Applicant to Formulate or Delineate a Particular Social Group.**

In evaluating whether the applicant has established a credible fear of persecution, if the claim is based on a particular social group, then the asylum officer cannot require an applicant to formulate or delineate particular social groups. The asylum officer must consider and evaluate possible formulations of particular social groups as part of the officer's obligation to elicit all relevant information from the applicant in this non-adversarial setting.

## XIII. SUMMARY

A.   **Expedited Removal**

In expedited removal, certain aliens seeking admission to the United States are immediately removable from the United States by DHS, unless they indicate an intention to apply for asylum or express a fear of persecution or torture or a fear of return to their home country. Aliens subject to expedited removal are not entitled to an immigration hearing or further review unless they are able to establish a credible fear of persecution or torture.

B.   **Function of Credible Fear Screening**

The purpose of the credible fear screening process is to identify persons subject to expedited removal who have a significant possibility of ultimately being found eligible for asylum under section 208 of the INA or withholding of removal or deferral of removal under CAT, and to identify and screen out non-meritorious asylum claims.

C.   **Credible Fear Standard of Proof: Significant Possibility**

In order to establish a credible fear of persecution or torture, the applicant must show a "significant possibility" that he or she could establish eligibility for asylum, withholding of removal, or deferral of removal.

The "significant possibility" standard of proof required to establish a credible fear of persecution or torture must be applied in conjunction with the standard of proof required for the ultimate determination on eligibility for asylum, withholding of removal, or protection under CAT.

Where there is disagreement among the United States Circuit Courts of Appeal as to the proper interpretation of a legal issue, or the claim otherwise raises an unresolved issue of law, then the interpretation most favorable to the applicant is used when determining whether the applicant satisfies the credible fear standard.[8]

## D.  Credibility

The asylum officer should assess the credibility of the assertions underlying the applicant's claim, considering the totality of the circumstances and all relevant factors.

## E.  Establishing a Credible Fear of Persecution

In general, findings that (1) there is a significant possibility that the applicant experienced past persecution on account of a protected characteristic, (2) such conditions continue in the applicant's home country, and (3) the applicant could not avoid such persecution by relocating within his or her home country are sufficient to satisfy the credible fear standard. However, if the applicant fails to present evidence demonstrating that there is a significant possibility of future persecution or other serious harm, or if there are no reasons to grant asylum based on the severity of the past persecution, a negative credible fear determination is appropriate.

When an applicant does not claim to have suffered any past harm, or where the evidence is insufficient to establish a significant possibility of past persecution under INA section 208, the asylum officer must determine whether there is a significant possibility the applicant could establish a well-founded fear of persecution on account of a protected characteristic under INA section 208.

## F.  Establishing a Credible Fear of Torture

In order to be eligible for withholding or deferral of removal under CAT, an applicant must establish that it is *more likely*

---

[8] If the order in *Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018), is lifted, then officers must instead follow the following guidance:

"The asylum officer should also apply the case law of the relevant federal circuit court, together with the applicable precedents of the Attorney General and the BIA. The BIA defers to precedents of the circuit in which the removal proceedings took place. *Matter of Anselmo*, 20 I. & N. Dec. 25, 31 (BIA 1989), except in certain special situations, *see id.*; *see also Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U. S. 967 (2005) (holding prior judicial construction of statute trumps agency construction otherwise entitled to Chevron deference only if prior court decision holds that its construction is required by unambiguous terms of statute and leaves no room for agency discretion)."

*than not* that he or she would be tortured in the country of removal. Therefore, a significant possibility of establishing eligibility for withholding or deferral of removal is necessarily a greater burden than establishing a significant possibility of eligibility for asylum.

After establishing that the applicant's claim would be found credible, the applicant satisfies the credible fear of torture standard where there is a significant possibility that he or she could establish in a full withholding of removal hearing that: (a) the torturer specifically intends to inflict severe physical or mental pain or suffering; (b) the harm constitutes severe pain or suffering; (c) the torturer is a public official or other person acting in an official capacity, or someone acting at the instigation of or with the consent or acquiescence of a public official or someone acting in official capacity; and (d) the applicant is in the torturer's custody or physical control.

In order to assess whether an applicant faces torture in the proposed country of removal, an officer must consider all relevant evidence, which includes but is not limited to the following: credible evidence of past torture; credible evidence that the applicant could internally relocate to avoid torture; and credible evidence of gross, flagrant, or mass violations of human rights within the country of removal, for which determination the officer must consult the objective country conditions set forth in Department of State country reports.

8 C.F.R. § 208.16(c)(3).

Under CAT, the burden is on the applicant to show that it is more likely than not that he or she will be tortured, and one of the relevant considerations is the possibility of internal relocation.

## G.   Other Issues

While the mandatory bars to asylum and withholding of removal do not apply to credible fear determinations, asylum officers must elicit and make note of all information relevant to whether a bar to asylum or withholding applies or not.

A spouse or child of an applicant may be included in the alien's credible fear evaluation and determination if the spouse or child arrived in the United States concurrently with the principal alien and desires to be included in the principal alien's determination.

The applicant may consult with any person prior to the credible fear interview. The applicant is also permitted to have a consultant present at the credible fear interview. A consultant

may be a relative, friend, clergy person, attorney, or representative.

For each credible fear interview, the asylum officer must create a summary of material facts as stated by the applicant and review the summary with the applicant.

AILA Doc. No. 19050602. (Posted 5/6/19)